IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

REVOCATION OF SUPERVISED
RELEASE TERM

MISC. No. 21-334(ADC)

## UNITED STATES' MOTION
## TO AMEND STANDING ORDER

On July 15, 2021, the Court issued a "Standing Order: Revocation Proceedings" in Misc. No. 21-334 (ADC). (ECF No. 1). The Court's Standing Order set forth the duties and responsibilities of the parties in revocation proceedings (*i.e.*, the U.S. Attorney's Office, defense attorneys, and the U.S. Probation Office), summarized legal standards applicable to revocation proceedings, and required two days' notice to the Court where a revocation proceeding would be contested. The Court's Order promotes efficiency and the timely scheduling of proceedings.

For the reasons set forth below, the United States respectfully requests that the Court amend its Standing Order to: (1) explicitly state that the Standing Order apply to both final revocation proceedings and revocation proceedings on this Court's docket before United States Magistrate Judges; (2) add two additional days to the 2-day notice provision to provide four days' notice; and (3) provide for the use of certified interpreters employed or contracted by the Court at all revocation proceedings.

1

The Court's Standing Order Should Apply to all Stages of Revocation Proceedings

The United States requests that the Court amend its Standing Order governing revocation of supervised release proceedings so that applies with equal force to preliminary revocation proceedings conducted before magistrate judges. Extending the Standing Order in this manner promotes consistency, judicial efficiency, and the fair administration of justice across all stages of the revocation proceedings.

Preliminary revocation proceedings are not isolated or purely ministerial events; they are the initial stage of a unified revocation process that can result with serious consequences.   The Supreme Court has long recognized that revocation proceedings implicate significant liberty interests and therefore require baseline procedural protections. *See Morrissey v. Brewer,* 408 U.S. 471, 480–82 (1972) (holding that parole revocation requires due process, including a preliminary determination of probable cause); *see also Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973) (extending Morrissey protections to probation revocation). These principles apply with equal force to supervised release proceedings. *See, e.g.*, *United States v. Grandlund,* 71 F.3d 507, 509–10 (5th Cir. 1995) (recognizing due process protections in supervised release revocation).

Federal Rule of Criminal Procedure 32.1 codifies these protections and governs both preliminary and final revocation proceedings. *See* Federal Rule of Criminal Procedure 32.1. The Rule provides that a person held in custody for violating

2

supervised release must be taken without unnecessary delay before a magistrate judge. Rule 32.1(b)(1) specifically provides that if a person is in custody for violating a condition of supervised release a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred. The person may waive the preliminary hearing. The person is not entitled to a preliminary hearing if not held in custody. If a judge finds probable cause, it is referred to conduct a revocation hearing.

Rule 32.1(b)(2) governs the revocation hearing in which the person is entitled to appear, present evidence; and question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear. The person may waive the final revocation hearing. The rule reflects that both stages are components of a single, continuous proceeding, and courts routinely interpret them in tandem. See *United States v. Stocks,* 104 F.3d 308, 312 (9th Cir. 1997).

Although the scope of a magistrate judge's role at the preliminary phase is limited, Congress has expressly authorized magistrate judges to conduct these proceedings. See 18 U.S.C. § 3401(i). That authority necessarily includes the ability to implement procedural frameworks established by the district court to govern revocation matters. Applying different procedural standards at the preliminary stage risks inconsistency, confusion among litigants, and unnecessary duplication of effort when the matter proceeds to the district judge.

Moreover, uniform application of the Standing Order ensures that defendants receive the same baseline procedural protections regardless of which judicial officer presides. This consistency aligns with the due process principles articulated in *Morrissey* and *Gagnon* and avoids disparate treatment. It also provides clear guidance to probation officers, defense counsel, and government attorneys, allowing them to prepare efficiently without recalibrating their approach depending on the stage of the proceeding.

Extending the Standing Order to magistrate-level proceedings would further conserve judicial resources. When procedures governing disclosures, filings, and evidentiary expectations are standardized from the outset, the need for corrective measures or supplemental proceedings at the district court level is reduced. This is consistent with the Court's inherent authority to manage its docket and regulate practice before it. *See Dietz v. Bouldin,* 579 U.S. 40, 45–47 (2016) (recognizing inherent authority of federal courts to manage proceedings efficiently).

Finally, nothing in the governing statutes or rules precludes this Court from applying its standing order to preliminary revocation proceedings. To the contrary, Rule 57(b) expressly permits district courts to regulate practice in any manner consistent with federal law and the Federal Rules of Criminal Procedure. *See* Federal Rule of Criminal Procedure 57(b).   Having the Standing Order apply at the magistrate

4

level simply exercises that authority to eliminate ambiguity and promote coherence across the revocation process.

For these reasons, the Court should expressly provide that its Standing Order governing revocation of supervised release proceedings applies equally to preliminary revocation proceedings before magistrate judges.

### The United States Requests Four Days' Notice of Intent to Contest

Given the number of revocation proceedings currently being handled by the Court, and the lack of certified interpreters available in Puerto Rico, the length of the notice requirement proves critical to the United States. On many occasions interpreters are not available, and continuances are requested for that purpose.

Among the inherent authority of federal courts is the power to impose reasonable procedures on litigants to prevent unnecessary disruption to court operations and to protect scarce judicial and institutional resources. *See, e.g.*, *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31 (recognizing courts' inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

Here, the Court should exercise that authority to require the defense to provide four days' notice when a supervised release or revocation hearing, either preliminary or final, will be contested. Such a modest procedural requirement is necessary to

5

address recurring inefficiencies that arise when contested hearings are not identified in advance.

First, the Court's calendar is already heavily burdened, and revocation hearings require the coordination of multiple institutional actors, including court staff, probation officers, and interpreters. When a hearing is unexpectedly contested on the day of proceedings, the Court is often forced to allocate additional time that could otherwise be directed to already-scheduled criminal or civil matters. Advance notice allows the Court to properly allocate time blocks and avoid unnecessary disruption to other litigants awaiting hearing dates. As the Standing Order notes at ¶ 5, this enables "efficient and timely scheduling."

Second, last-minute determinations that a hearing will proceed as contested impose avoidable financial costs on the system. In particular, interpreter services must often be scheduled in advance and are subject to cancellation fees when not timely withdrawn. When parties fail to provide advance notice of contest, there are unnecessary costs for interpreter appearance or reservation time that could have been avoided. These expenses are not trivial given the increasing demand for certified interpreters and the limited availability of qualified personnel. An analysis by the U.S. Attorney's Office budget staff revealed that the United States had to pay $11,330 in cancellation fees for interpreters at revocation hearings during FY25 and the first quarter of FY26. Cancellation fees are charged unless the interpreter receives notice at

6

least 72 hours (*i.e.*, 3 days) before the hearing will be cancelled. These cancellation fee costs were in addition to actual interpreter fees of $34,267 during that period.

Finally, failure to provide advance notice causes significant inconvenience to subpoenaed witnesses who appear expecting a contested evidentiary proceeding. Those witnesses often include state police officers and prosecutors who have their own busy schedules and calendars. When hearings are unexpectedly resolved or converted to uncontested matters, these individuals—who have often rearranged work schedules, traveled significant distances, and waited in court—are needlessly burdened. Such inefficiency undermines respect for the judicial process and places unnecessary strain on non-party participants.

Courts routinely adopt procedural mechanisms designed to reduce precisely these types of inefficiencies. The proposed four-day notice requirement is minimal, easily administered, and proportionate to the burdens it seeks to alleviate. It does not restrict a party's substantive rights or ability to contest a revocation hearing; it merely ensures that the Court, its staff, and participating third parties can prepare appropriately.

For those reasons, the Court should exercise its inherent authority to amend its Standing Order to require four days' advance notice to the Court as to whether a preliminary or final revocation hearing will be contested.

7

<u>Request to Use Court Interpreters in Revocation Proceedings</u>

Revocation proceedings are not equivalent to criminal prosecutions but rather post-conviction proceedings arising from alleged violations of conditions of supervised release previously imposed by the Court. The violations are generally reported by the Probation Office, as an arm of the Court's supervisory authority, and the revocation proceedings are initiated by the Court. 18 U.S.C. § 3583(e)(3) provides the court with plenary authority to revoke supervised release. Unlike a criminal prosecution, the government is not seeking to establish guilt for a new offense beyond a reasonable doubt. Instead, the Court is reaching a determination—by a preponderance of the evidence—of whether a defendant has violated the terms of supervision previously ordered by the Court. The purpose of these proceedings is fundamentally administrative and supervisory, focusing on compliance with court-ordered conditions.

Because revocation proceedings arise from the Court's continuing jurisdiction over the defendant, they are more appropriately viewed as an extension of the Court's supervisory function rather than a stand-alone adversarial prosecution. For that reason, interpreter services in this context are properly considered part of the Court's administrative infrastructure rather than a litigation resource that must be separately supplied by the United States. The Court initiates the revocation proceedings, controls the scheduling and conduct of revocation hearings, and the efficient administration of

8

those hearings is best served by centralized court interpreter services rather than requiring duplicative arrangements by the parties.

Requiring the United States to secure separate interpreters for revocation proceedings creates avoidable inefficiencies and unnecessary costs, particularly where hearings are frequently continued, resolved, or otherwise modified shortly before the scheduled date. In such circumstances and as noted above, last-minute cancellations result in cancellation fees -- costing the government thousands of dollars annually -- or wasted interpreter time, imposing unnecessary costs on public fisc. Centralized use of court staff interpreters avoids these inefficiencies by allowing flexible allocation of interpreter resources across the Court's docket and eliminating duplication of effort between the Court, and outside vendors.

This approach is also consistent with practice in many federal districts, where court-managed interpreter services are routinely used for revocation and other post-judgment proceedings as part of broader language access systems. Those districts recognize that revocation hearings are part of the Court's continuing supervision of a defendant and therefore appropriately fall within the scope of court-provided interpretation services. Centralized interpretation promotes consistency, efficiency, and cost control while ensuring that language access obligations are met.

For those reasons, the United States requests that the Court's Standing Order reflect that interpreter services in revocation proceedings be provided through court staff interpreters rather than requiring the United States to separately procure

9

interpretation services if a witness is required to testify. This approach reflects the true nature of revocation proceedings, avoids unnecessary public expense, and aligns with established administrative practice in other federal jurisdictions.

WHEREFORE, the United States respectfully requests that the Court amend its Scheduling Order to incorporate the modifications requested herein.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 13th day of May, 2026.

W. Stephen Muldrow
United States Attorney


*s/Timothy R. Henwood*
Tim Henwood
U.S.D.C. No. 218608
350 Chardon Ave. #1201
Torre Chardon Suite 1201
Hato Rey, P.R.    00918
Tel. (787) 766-5656

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

At Hato Rey, Puerto Rico, May 13, 2026.

S/Timothy R. Henwood
U.S.D.C. No. 218608

11